## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

– – – – – – – – – – – – – – – – – – – – – – – – –X

– – – – – – – – –

Mainstream Engineering Corporation, a     :          CASE NO.
Florida corporation

                      Plaintiff(s),     :

             against          :          **COMPLAINT FOR**
                                    **PATENT**
                                    **INFRINGEMENT**

PAD DEPOT, INC., a Florida corporation  :

                Defendant(s).    :          **JURY TRIAL**
                                      **DEMANDED**

– – – – – – – – – – – – – – – – – – – – – – – – –X

– – – – – – – – –

Plaintiff Mainstream Engineering Corporation ("Mainstream"), by and through its

attorneys, for its Complaint against defendant PAD DEPOT, INC. ("Defendant"),

alleges as follows:

### PRELIMINARY STATEMENT

1.     This is an action for patent infringement arising under the patent laws

of the United States, Title 35, United States Code, in which Mainstream accuse

Defendant of infringing U.S. Patent Nos. 11,384,896; 11,460,148; 11,460,149;

11,649,921; D1,007,425; D1,012,858; and D1,012,859.

## JURISDICTION

2. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85.

3. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1138, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patent and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

4. Personal jurisdiction over the Defendant is proper in this District because the Defendant resides in and has a regular and established place of business in this District.

## VENUE

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b). Defendant resides in or has committed acts of infringement and has a regular and established place of business in this District

## PARTIES

6. Mainstream is a corporation that is incorporated in Florida and has its principal place of business in 200 Yellow Place, Rockledge, FL 32955.

2

7.    Upon information and belief, Defendant is a corporation that is incorporated in Florida and has its principal place of business in 26100 CR 561, Astatula, FL 34705.

## FACTS
### The Asserted Patents

8.    This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent Nos. 11,384,896 ("the '896 Patent"), 11,460,148 ("the '148 Patent"), 11,460,149 ("the '149 Patent"), 11,649,921 ("the '921 Patent"), D1,007,425 ("the D'425 Patent"), D1,012,858 ("the D'858 Patent"), D1,012,859 ("the D'859 Patent") (together, "the Asserted Patents").

9.    The '896 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 12, 2022. Each and every claim of the '896 Patent is valid and enforceable. A true and correct copy of the '896 Patent is attached as Exhibit A.

10.    The '148 Patent was lawfully and properly issued by the United States Patent and Trademark Office on October 4, 2022. Each and every claim of the '148 Patent is valid and enforceable. A true and correct copy of the '148 Patent is attached as Exhibit B.

11.    The '149 Patent was lawfully and properly issued by the United States Patent and Trademark Office on October 4, 2022. Each and every claim of the '149 Patent is valid and enforceable. A true and correct copy of the '149 Patent is attached as Exhibit C.

12.    The '921 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 16, 2023. Each and every claim of the '921 Patent is valid and enforceable. A true and correct copy of the '921 Patent is attached as Exhibit D.

13.    The D'425 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 12, 2023. The claim of the D'425 is valid and enforceable. A true and correct copy of the D'425 is attached as Exhibit E.

14.    The D'858 Patent was lawfully and properly issued by the United States Patent and Trademark Office on January 30, 2024. The claim of the D'858 is valid and enforceable. A true and correct copy of the D'858 is attached as Exhibit F.

15.    The D'859 Patent was lawfully and properly issued by the United States Patent and Trademark Office on January 30, 2024. The claim of the D'859

is valid and enforceable. A true and correct copy of the D'859 is attached as Exhibit G.

16.    Plaintiff is the owner of the entire right, title, and interest in the Asserted Patents.

17.    Plaintiff has complied with the requirements of 35 U.S.C. § 287 because Plaintiff has provided markings and notice as to the ownership of the Asserted Patents.

18.    Upon information and belief, Defendant has committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

## The Inventions

19.    The inventions are related to a pad for outdoor equipment and appliances that not only raise the unit, equipment, or appliance to provide clearance from grade, as required by most building codes, but that also secures that unit, equipment, or appliance to prevent movement and tipping associated with hurricane force winds.

5

20.     The pad will be secured to the unit, equipment, or appliance through the inclusion of receivers that are installed in the pad. Fasteners are then passed through mounting points on the unit, equipment, or appliance and fasten into the receivers that are installed in the pad.

21.     The '896 Patent provides for a novel equipment mounting pad for securing a standby generator with a base having openings that allow fasteners to pass through the openings to secure the generator to the pad. The pad has a top surface having receivers and each receiver has a threaded insert to receive fasteners. The threaded inserts align with the openings of the base of the generator and the fasteners pass through the openings and thread into the insert in order to secure the generator to the pad.

22.     The '148 and '149 Patents provide for novel pads securing a standby generator using fasteners. The pads have top surfaces having sets of receivers at least shaped in a triangular pattern and a quadrilateral pattern. These patterns are associated with the patterns on the generator.

23.     The '921 Patent provides an equipment pad for securing a standby generator that has a base having openings that allow fasteners to pass through to secure the generator to the pad. The pad has a top surface that contains receivers which further contain threaded inserts which are formed to receive fasteners and

these inserts align with the openings of the base of the generator to allow the fasteners to thread into the inserts and secure the generator to the pad.

24. The D'425 Patent claims the ornamental design as shown and described in the patent, including a top surface and side surfaces surrounding the top surface and the top surface has four features in a quadrilateral configuration.

25. The D'858 Patent claims the ornamental design as shown and described in the patent, including a top surface and side surfaces surrounding the top surface and the top surface has four features in a quadrilateral configuration.

26. The D'859 Patent claims the ornamental design as shown and described in the patent, including a top surface and side surfaces surrounding the top surface.

27. The claims of the patents define the scope of the patented inventions.

**Defendant's Infringing Activities and Products**

28. Upon information and belief, Defendant has and continues to infringe the '896, '148, '149, '921, D'425, D'858, and D'859 Patents by making, using, selling, and offering for sale the NEXTPAD® and Oval Pad generator pads in the United States and importing into the United States NEXTPAD® and Oval Pad generator pads that embody or use the inventions claimed in the '896, '148, '149,

'921, D'425, D'858, and D'859 Patents. The shape of the pads and the pads have receivers with threaded inserts at locations that align with the openings in the base of a standby generator.

29.   Upon information and belief, Defendant has been and is inducing infringement of the '896, '148, '149, '921, D'425, D'858, and D'859 Patents by actively and knowingly inducing others to make, use, sell, offer for sale, or import NEXTPAD® and Oval Pad generator pads that embody or use the inventions claimed in the '896, '148, '149, '921, D'425, D'858, and D'859 Patents. Specifically, the Defendant sells its generator pads to third parties to actively use or to sell to others to offer for sale to third parties. An exemplary selling activity is shown below (see https://paddepot.com/shop, accessed 7-21-26):



8

30.    Upon information and belief, Defendant has been and is continuing to contributorily infringe the '896, '148, '149, '921, D'425, D'858, and D'859 Patents by selling or offering to sell NEXTPAD® and Oval Pad generator pads, knowing them to be especially made or especially adapted for practicing the invention of the '896, '148, '149, '921, D'425, D'858, and D'859 Patents and not a staple article or commodity of commerce suitable for substantial non-infringing use.

31.    Upon information and belief, Defendant has known of the existence of the '896, '148, '149, '921, D'425, D'858, and D'859 Patents, and its acts of infringement have been willful and in disregard for the '896, '148, '149, '921, D'425, D'858, and D'859 Patents, without any reasonable basis for believing that it had a right to engage in the infringing conduct. Mainstream lists on the label of the its QwikPad® for Generators the patent numbers associated with the QwikPad® product as well as on the Mainstream website and Mainstream sent to Defendant's principal place of business and registered agent's address, via FEDEX, a cease and desist letter dated on March 25, 2026 and Mainstream received a response from Defendant's counsel on April 16, 2026 by email concerning the letter dated March 25, 2026.

9

32.    Mainstream has lost sales resulting from Defendant's infringing conduct.

**COUNT ONE – Patent Infringement of the '896 Patent**

33.    Mainstream repeats and realleges paragraphs 1 through 32 hereof, as if fully set forth herein.

34.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '896 Patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '896 Patent. Such unlicensed products include the NEXTPAD® and Oval Pad.

35.    Upon information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '896 Patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents.

36.    An exemplary comparison of the NEXTPAD®, when assembled and used as intended, with claim 3 of the '896 Patent, is illustrated in the chart below:

| '896 Pat. Claim 3 | NEXTPAD® |
|---|---|
| An equipment pad securing at least one standby generator, wherein the standby generator has a base that has a plurality of openings for a plurality of fasteners to pass individually through one of the plurality of opening to secure the standby generator to the equipment pad, the equipment pad comprising: | The NEXTPAD® is an equipment pad to secure a standby generator.<br><br> |
| a surface having a plurality of threaded inserts that are positioned on the surface to align with the plurality of openings on the base of the standby generator in order for one of the plurality of fasteners to pass through one of the plurality of | The NEXTPAD® has a top surface (image 1) with multiple threaded inserts (image 1 and image 2) that align with the openings on the base of the standby generator in order for fasteners to pass through the openings and thread into the inserts (image 3) and secure the generator to the pad. |

openings and thread into one of the plurality of threaded inserts in order to secure the standby generator on to the surface of the equipment pad;



Image 1



Image 2

12



Image 3

| | |
|---|---|
| a bottom surface; and | Axiomatically, the NEXTPAD® necessarily has a bottom surface. |
| a plurality of side surfaces attached to the top surface and bottom surface and forming an internal hollow region encapsulated by the top, bottom, and side surfaces. | The side surfaces of the NEXTPAD® attached the top and bottom surfaces and form an internal hollow region for a foam insert to be placed therein (images 4 and 5) |



Image 4

Image 5

37.    An exemplary comparison of the Oval Pad, when assembled and used as intended, with claim 3 of the '896 Patent, is illustrated in the chart below:

| '896 Pat. Claim 3 | Oval Pad |
|---|---|
| An equipment pad securing at least one standby generator, wherein the standby generator has a base that has a plurality of openings for a plurality of fasteners to pass individually through one of the plurality of opening to secure the standby generator to the equipment pad, the equipment pad comprising: | The Oval Pad is an equipment pad to secure a standby generator. |
| a surface having a plurality of threaded inserts that are positioned on the surface to align with the plurality of openings on the base of the standby generator in order for one of the plurality of fasteners to pass | The Oval Pad has a top surface (image 1) with multiple threaded inserts (image 1) that align with the openings on the base of the standby generator in order for fasteners to pass through the openings and thread into the inserts (images 1 and 2) and secure the generator to the pad. |

15

| | |
|---|---|
| through one of the plurality of openings and thread into one of the plurality of threaded inserts in order to secure the standby generator on to the surface of the equipment pad; | <br><br>Image 1<br><br><br><br>Image 2 |
| a bottom surface; and | The Oval Pad necessarily has a bottom surface (image 3) |



Image 3

| a plurality of side surfaces attached to the top surface and bottom surface and forming an internal hollow region encapsulated by the top, bottom, and side surfaces. | The side surfaces of the Oval Pad attached the top and bottom surfaces (image 1 and image 2) and form an internal hollow region for a foam insert to be placed therein (image 3).  |

17



Image 1

Image 2

Image 3

38.    Upon information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '896 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the NEXTPAD® and the Oval Pad while selling products.

39.    Upon information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 3 of the '896 Patent.

40.    Upon information and belief, Defendant also contributes to the infringement of the '896 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the NEXTPAD® and Oval Pad and the components are not suitable for a substantial noninfringing use.

41.    Defendant has engaged in egregious infringement behavior with knowledge of the '896 Patent, which has been duly issued by the USPTO, and is presumed valid. Upon information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the

19

'896 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '896 Patent.

42.     By its actions, Defendant has injured Mainstream and is liable to Mainstream for infringement of the '896 Patent pursuant to 35 U.S.C. § 271.

43.     By its actions, Defendant's infringement of the '896 Patent has irreparably injured Mainstream. Unless such infringing acts are enjoined by this Court, Mainstream will continue to suffer additional irreparable injury.

44.     By its actions, Defendant's infringement of the '896 Patent has damaged and continues to damage Mainstream in an amount yet to be determined.

45.     Defendant's infringement of the '896 Patent is exceptional and entitles Mainstream to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

46.     Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Mainstream's business, sales, reputation, and good-will.

47. Mainstream has been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT TWO – Patent Infringement of the '148 Patent

48. Mainstream repeats and realleges paragraphs 1 through 47 hereof, as if fully set forth herein.

49. In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '148 Patent, including but not limited to claim 12, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '148 Patent. Such unlicensed products include the NEXTPAD® and Oval Pad.

50. Upon information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '148 Patent, including but not limited to claim 12, literally and/or under the doctrine of equivalents.

21

51.    An exemplary comparison of the NEXTPAD®, when assembled and used as intended, with claim 12 of the '148 Patent, is illustrated in the chart below:

| '148 Pat. Claim 12 | NEXTPAD® |
|---|---|
| A pad for securing an equipment via fasteners comprising: | The NEXTPAD® is an equipment pad to secure a standby generator (image 1) using fasteners (image 2).<br><br><br><br>Image 1 |



Image 2

| | |
|---|---|
| a top surface, a bottom surface, and a side surface attached to the top surface and the bottom surface, the side surface defining a distance between the top surface and the bottom surface; | The NEXTPAD® has a top surface (image 1). The NEXTPAD® axiomatically has a bottom surface and side surfaces defining a distance between the top and bottom surfaces (image 2) |



Image 1



**NextPad 4"**

4" NextPad for Generac NextGen
generators - 189 LBS

**$120**

−   1   +

🛒  Add to Cart

**NextPad 3"**

3" NextPad for Generac NextGen
generators - 160 LBS

**$120**

−   1   +

🛒  Add to Cart

Image 2

| said top surface having a plurality of receivers for receiving fasteners positioned thereon, the receivers having a lower surface at a depth less than the distance between the top surface and the bottom surface, wherein the plurality of receivers consists of a set of four receivers in a | The NEXTPAD® has receivers in its top surface to receive fasteners and the receivers are in a quadrilateral pattern (image 1). The receivers' lower surfaces are less than the distance between the top and bottom surfaces because the receiver is essentially a blind hole (images 2 and 3) |
|---|---|

| quadrilateral pattern. |

Image 1 |



Image 2



Image 3

52.    An exemplary comparison of the Oval Pad, when assembled and used as intended, with claim 12 of the '148 Patent, is illustrated in the chart below:

| '148 Pat. Claim 12 | Oval Pad |
|---|---|
| A pad for securing an equipment via fasteners comprising: | The Oval Pad is an equipment pad to secure a standby generator using fasteners (image 1) using fasteners.<br><br><br><br>Image 1 |
| a top surface, a bottom surface, and a side surface attached to the top surface and the bottom surface, the side surface defining a distance between the top surface and the | The Oval Pad has a top surface and side surface and a bottom surface (images 1 and 2). The side surface is attached to the top and bottom surfaces and defines a distance therebetween. |

| bottom surface; |  |
|---|---|
| | Image 1 |
| | Image 2 |
| said top surface having a plurality | The Oval Pad has receivers in its top surface to receive |

| | |
|---|---|
| of receivers for receiving fasteners positioned thereon, the receivers having a lower surface at a depth less than the distance between the top surface and the bottom surface, wherein the plurality of receivers consists of a set of four receivers in a quadrilateral pattern. | fasteners and the receivers are in a quadrilateral pattern (image 1). The receivers' lower surfaces are at a depth less than the distance between the top and bottom surfaces because the receivers are blind holes (images 2 and 3)<br><br><br><br>Image 1<br><br><br><br>Image 2 |



Image 3

53.     Upon information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '148 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the NEXTPAD® and the Oval Pad while selling products.

54.     Upon information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 12 of the '148 Patent.

55.     Upon information and belief, Defendant also contributes to the infringement of the '148 Patent by others, including its customers. Acts by

Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the NEXTPAD® and Oval Pad and the components are not suitable for a substantial noninfringing use.

56. Defendant has engaged in egregious infringement behavior with knowledge of the '148 Patent, which has been duly issued by the USPTO, and is presumed valid. Upon information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '148 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '148 Patent.

57. By its actions, Defendant has injured Mainstream and is liable to Mainstream for infringement of the '148 Patent pursuant to 35 U.S.C. § 271.

58. By its actions, Defendant's infringement of the '148 Patent has irreparably injured Mainstream. Unless such infringing acts are enjoined by this Court, Mainstream will continue to suffer additional irreparable injury.

59. By its actions, Defendant's infringement of the '148 Patent has damaged and continues to damage Mainstream in an amount yet to be determined.

60.    Defendant's infringement of the '148 Patent is exceptional and entitles Mainstream to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

61.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Mainstream's business, sales, reputation, and good-will.

62.    Mainstream has been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT THREE – Patent Infringement of the '149 Patent

63.    Mainstream repeats and realleges paragraphs 1 through 62 hereof, as if fully set forth herein.

64.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '149 Patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner

that infringes the '149 Patent. Such unlicensed products include the NEXTPAD®
and Oval Pad.

65.    Upon information and belief, Defendant has and continues to willfully
infringe, induce others to infringe, and/or contribute to the infringement of one or
more claims of the '149 Patent, including but not limited to claim 3, literally and/or
under the doctrine of equivalents.

66.    An exemplary comparison of the NEXTPAD®, when assembled and
used as intended, with claim 3 of the '149 Patent, is illustrated in the chart below:

| '149 Pat. Claim 3 | NEXTPAD® |
|---|---|
| A pad for securing an equipment via fasteners comprising: | The NEXTPAD® is an equipment pad to secure a standby generator (image 1) using fasteners (image 2). |



Image 1



Image 2

| | |
|---|---|
| a top surface, a bottom surface, and a side surface attached to the top surface and the bottom surface, the side surface defining a distance between the top surface and the bottom surface; and | The NEXTPAD® has a top surface, a bottom surface, and a side surface to a define a distance and attach the top and bottom surfaces (images 1, 2, and 3). |

36



Image 1

Image 2



Image 3

| | |
|---|---|
| said top surface having positioned thereon a set of receivers for receiving a plurality of inserts, wherein the set of receivers with inserts consists of four receivers with inserts disposed in a quadrilateral pattern associated with a distinct equipment. | The NEXTPAD® has receivers in its top surface to receive fasteners and the receivers are in a quadrilateral pattern (image 1). The receivers' lower surfaces are less than the distance between the top and bottom surfaces because the receiver is essentially a blind hole (image 2). |



Image 1

Image 2



Image 3

67.    An exemplary comparison of the Oval Pad, when assembled and used as intended, with claim 3 of the '149 Patent, is illustrated in the chart below:

| '149 Pat. Claim 3 | Oval Pad |
|---|---|
| A pad for securing an equipment via fasteners comprising: | The Oval Pad is an equipment pad to secure a standby generator using fasteners (image 1) using fasteners. |



Image 1

| | |
|---|---|
| a top surface, a bottom surface, and a side surface attached to the top surface and the bottom surface, the side surface defining a distance between the top surface and the bottom surface; | The Oval Pad has a top surface and side surface (image 1) and axiomatically a bottom surface. The side surface is attached to the top and bottom surfaces and defines a distance therebetween (image 2). |



Image 1

Image 2

| said top surface having positioned thereon a set of | The Oval Pad has receivers in its top surface to receive fasteners and the receivers are in a quadrilateral pattern (image 1). The receivers' lower surfaces are at a depth less |
|---|---|

| | |
|---|---|
| receivers for receiving a plurality of inserts, wherein the set of receivers with inserts consists of four receivers with inserts disposed in a quadrilateral pattern associated with a distinct equipment. | than the distance between the top and bottom surfaces because the receivers are blind holes (images 1, 2, and 3).<br><br><br><br>Image 1<br><br><br><br>Image 2 |

43



Image 3

68. Upon information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '149 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the NEXTPAD® and the Oval Pad while selling products.

69. Upon information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 3 of the '149 Patent.

70. Upon information and belief, Defendant also contributes to the infringement of the '149 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited

44

to, the sale, offer for sale, and/or importation by Defendant of the components of the NEXTPAD® and Oval Pad and the components are not suitable for a substantial noninfringing use.

71.    Defendant has engaged in egregious infringement behavior with knowledge of the '149 Patent, which has been duly issued by the USPTO, and is presumed valid. Upon information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '149 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '149 Patent.

72.    By its actions, Defendant has injured Mainstream and is liable to Mainstream for infringement of the '149 Patent pursuant to 35 U.S.C. § 271.

73.    By its actions, Defendant's infringement of the '149 Patent has irreparably injured Mainstream. Unless such infringing acts are enjoined by this Court, Mainstream will continue to suffer additional irreparable injury.

74.    By its actions, Defendant's infringement of the '149 Patent has damaged and continues to damage Mainstream in an amount yet to be determined.

75.    Defendant's infringement of the '149 Patent is exceptional and entitles Mainstream to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

76.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Mainstream's business, sales, reputation, and good-will.

77.    Mainstream has been substantially harmed by Defendant's infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT FOUR – Patent Infringement of the '921 Patent

78.    Mainstream repeats and realleges paragraphs 1 through 77 hereof, as if fully set forth herein.

79.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '921 Patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner

that infringes the '921 Patent. Such unlicensed products include the NEXTPAD®

and Oval Pad.

80.    Upon information and belief, Defendant has and continues to willfully

infringe, induce others to infringe, and/or contribute to the infringement of one or

more claims of the '921 Patent, including but not limited to claim 1, literally and/or

under the doctrine of equivalents.

81.    An exemplary comparison of the NEXTPAD®, when assembled and

used as intended, with claim 1 of the '921 Patent, is illustrated in the chart below:

| '921 Pat. Claim 1 | NEXTPAD® |
|---|---|
| An equipment pad securing at least one standby generator that has a base having a plurality of openings that allow a plurality of fasteners to pass through the plurality of openings to secure the standby generator to the equipment pad, the equipment pad comprising: | The NEXTPAD® is an equipment pad for securing a generator (image 1) that has a base having openings to allow fasteners to pass through the openings to secure the generator to the pad (image 2) |



Image 1



Image 2

| | |
|---|---|
| a top surface having a plurality of receivers, the plurality of receivers containing a plurality of threaded inserts within, the plurality of threaded inserts are formed to receive the plurality of fasteners, | The NEXTPAD® has a top surface with receivers (image 1) and thread inserts within the receivers (image 2) and the inserts receive the fasteners (image 3 and 4). |



Image 1

Image 2



Image 3



Image 4

| wherein the plurality of threaded inserts | In the NEXTPAD®, the threaded inserts align with the openings on the generator to allow the fasteners to pass |
| --- | --- |

| | |
|---|---|
| align with the plurality of openings on the base of the standby generator to allow the plurality of fasteners to pass through the plurality of openings and thread into the plurality of threaded inserts in order to secure the standby generator on to the surface of the equipment pad; | through the openings and thread into the threaded inserts (image 1) in order to secure the generator to the pad (image 2).  Image 1 |



Image 2

| | |
|---|---|
| a bottom surface; and | The NEXTPAD® axiomatically has a bottom surface, see below (image 2) |
| a plurality of side surfaces attached to the top surface and bottom surface and forming an internal hollow region encapsulated by the top, bottom, and side surfaces. | The side surfaces of the NEXTPAD® attached the top and bottom surfaces (image 1) and form an internal hollow region for a foam insert to be placed therein, upon information and belief (image 2). |



Image 1

Image 2

82.    An exemplary comparison of the Oval Pad, when assembled and used as intended, with claim 1 of the '921 Patent, is illustrated in the chart below:

| '921 Pat. Claim 1 | Oval Pad |
|---|---|
| An equipment pad securing at least one standby generator that has a base having a plurality of openings that allow a plurality of fasteners to pass through the plurality of openings to secure the standby generator to the equipment pad, the equipment pad comprising: | The Oval Pad is an equipment pad for securing a generator (image 1) that has a base having openings to allow fasteners to pass through the openings to secure the generator to the pad (see exemplary image 2 for generator's base) Image 1 |



Image 2

| | |
|---|---|
| a top surface having a plurality of receivers, the plurality of receivers containing a plurality of threaded inserts within, the plurality of threaded inserts are formed to receive the plurality of fasteners, | The Oval Pad has a top surface with receivers (image 1) and thread inserts within the receivers and the inserts receive the fasteners (image 2). |



Image 1



Image 2

| | |
|---|---|
| wherein the plurality of threaded inserts align with the plurality of openings on the base of the standby | In the Oval Pad, the threaded inserts align with the openings on the generator to allow the fasteners to pass through the openings and thread into the threaded inserts (see exemplary image 1) in order to secure the generator to the pad (image 2). |

| generator to allow the plurality of fasteners to pass through the plurality of openings and thread into the plurality of threaded inserts in order to secure the standby generator on to the surface of the equipment pad; | <br><br>Image 1<br><br> |
| --- | --- |

| | Image 2 |
|---|---|
| a bottom surface; and | The Oval Pad axiomatically has a bottom surface, see image 2 below. |
| a plurality of side surfaces attached to the top surface and bottom surface and forming an internal hollow region encapsulated by the top, bottom, and side surfaces. | The side surfaces of the Oval Pad attached the top and bottom surfaces (image 1) and form an internal hollow region for a foam insert to be placed therein (image 2).<br><br><br><br>Image 1 |



Image 2

83.    Upon information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the '921 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the NEXTPAD® and the Oval Pad while selling products.

84.    Upon information and belief, Defendant knows or should know that such activities induce others to directly infringe at least claim 1 of the '921 Patent.

85.    Upon information and belief, Defendant also contributes to the infringement of the '921 Patent by others, including its customers. Acts by

Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the NEXTPAD® and Oval Pad and the components are not suitable for a substantial noninfringing use.

86.     Defendant has engaged in egregious infringement behavior with knowledge of the '921 Patent, which has been duly issued by the USPTO, and is presumed valid. Upon information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the '921 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the '921 Patent.

87.     By its actions, Defendant has injured Mainstream and is liable to Mainstream for infringement of the '921 Patent pursuant to 35 U.S.C. § 271.

88.     By its actions, Defendant's infringement of the '921 Patent has irreparably injured Mainstream. Unless such infringing acts are enjoined by this Court, Mainstream will continue to suffer additional irreparable injury.

89.     By its actions, Defendant's infringement of the '921 Patent has damaged and continues to damage Mainstream in an amount yet to be determined.

90.    Defendant's infringement of the '921 Patent is exceptional and entitles Mainstream to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

91.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Mainstream's business, sales, reputation, and good-will.

### COUNT FIVE – Patent Infringement of the D'425 Patent

92.    Mainstream repeats and realleges paragraphs 1 through 91 hereof, as if fully set forth herein.

93.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of the claim of the D'425 Patent, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the D'425 Patent. Such unlicensed products include the NEXTPAD® and Oval Pad.

94.    Upon information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of the claim of the D'425 Patent, literally and/or under the doctrine of equivalents.

95. In design patents, solid lines are used to show the claimed portions of the design, while broken lines or dashed lines show purely environmental matter or portions that form no part of the claim. To determine infringement of a design patent, it is only necessary to consider the solid lines in the design patent's claim.

96. The NEXTPAD® and Oval Pad satisfy the design claim of the D'425 Patent because they have adopted every aspect of the claimed design and have an overall appearance that is substantially the same in the eyes of the ordinary observer. Claim charts comparing the claim of the D'425 Patent to the NEXTPAD® and Oval Pad are attached as Exhibits H and I.

97. As shown in Exhibits H and I, the solid lines of the D'425 define the border of the top surface and portions of the sides along with small circle features located on the top surface. The border of the top surface is shaped rectilinearly / rounded-rectangular with rounded corners and a slight bow outward both along the major and minor axis. In addition, the edges of the border are beveled. Within the center of the top surface small circular features are near the four corners. Both the NEXTPAD® and Oval Pad include the aforementioned claimed ornamental design features of the D'425 Patent, resulting in an overall appearance that is substantially the same in the eyes of the ordinary observer. To the extent there are any minor, isolated differences between the claimed design and the designs of the

63

NEXTPAD® and Oval Pad, those differences do not change the substantially similar overall ornamental appearances. Any differences between the claimed design in the D'425 Patent and the NEXTPAD® and Oval Pad are minor and do not detract from the similarity in the overall ornamental appearances.

98.   Upon information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the D'425 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the NEXTPAD® and the Oval Pad while selling products.

99.   Upon information and belief, Defendant knows or should know that such activities induce others to directly infringe the claim of the D'425 Patent.

100.   Upon information and belief, Defendant also contributes to the infringement of the D'425 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the NEXTPAD® and Oval Pad and the components are not suitable for a substantial noninfringing use.

101.   Defendant has engaged in egregious infringement behavior with knowledge of the D'425 Patent, which has been duly issued by the USPTO, and is presumed valid. Upon information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the D'425 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the D'425 Patent.

102.   By its actions, Defendant has injured Mainstream and is liable to Mainstream for infringement of the D'425 Patent pursuant to 35 U.S.C. § 271.

103.   By its actions, Defendant's infringement of the D'425 Patent has irreparably injured Mainstream. Unless such infringing acts are enjoined by this Court, Mainstream will continue to suffer additional irreparable injury.

104.   By its actions, Defendant's infringement of the D'425 Patent has damaged and continues to damage Mainstream in an amount yet to be determined.

105.   Defendant's infringement of the D'425 Patent is exceptional and entitles Mainstream to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

106.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Mainstream's business, sales, reputation, and good-will.

### COUNT SIX – Patent Infringement of the D'858 Patent

107.    Mainstream repeats and realleges paragraphs 1 through 106 hereof, as if fully set forth herein.

108.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of the claim of the D'858 Patent, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the D'858 Patent. Such unlicensed products include the NEXTPAD® and Oval Pad.

109.    Upon information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of the claim of the D'858 Patent, literally and/or under the doctrine of equivalents.

110.    In design patents, solid lines are used to show the claimed portions of the design, while broken lines or dashed lines show purely environmental matter or portions that form no part of the claim. To determine infringement of a design patent, it is only necessary to consider the solid lines in the design patent's claim.

66

111. The NEXTPAD® and Oval Pad satisfy the design claim of the D'858 Patent because they have adopted every aspect of the claimed design and have an overall appearance that is substantially the same in the eyes of the ordinary observer. Claim charts comparing the claim of the D'858 Patent to the NEXTPAD® and Oval Pad are attached as Exhibits J and K.

112. As shown in Exhibits J and K, the solid lines of the D'858 define the border of the top surface and portions of the sides along with small circle features located on the top surface. The border of the top surface is shaped rectilinearly / rounded-rectangular with rounded corners and a slight bow outward both along the major and minor axis. In addition, the edges of the border are beveled. Within the center of the top surface small circular features are near the four corners. Both the NEXTPAD® and Oval Pad include the aforementioned claimed ornamental design features of the D'858 Patent, resulting in an overall appearance that is substantially the same in the eyes of the ordinary observer. To the extent there are any minor, isolated differences between the claimed design and the designs of the NEXTPAD® and Oval Pad, those differences do not change the substantially similar overall ornamental appearances. Any differences between the claimed design in the D'858Patent and the NEXTPAD® and Oval Pad are minor and do not detract from the similarity in the overall ornamental appearances.

113.   Upon information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the D'858 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the NEXTPAD® and the Oval Pad while selling products.

114.   Upon information and belief, Defendant knows or should know that such activities induce others to directly infringe the claim of the D'858 Patent.

115.   Upon information and belief, Defendant also contributes to the infringement of the D'858 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the NEXTPAD® and Oval Pad and the components are not suitable for a substantial noninfringing use.

116.   Defendant has engaged in egregious infringement behavior with knowledge of the D'858 Patent, which has been duly issued by the USPTO, and is presumed valid. Upon information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the

68

D'858 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the D'858 Patent.

117.    By its actions, Defendant has injured Mainstream and is liable to Mainstream for infringement of the D'858 Patent pursuant to 35 U.S.C. § 271.

118.    By its actions, Defendant's infringement of the D'858 Patent has irreparably injured Mainstream. Unless such infringing acts are enjoined by this Court, Mainstream will continue to suffer additional irreparable injury.

119.    By its actions, Defendant's infringement of the D'858 Patent has damaged and continues to damage Mainstream in an amount yet to be determined.

120.    Defendant's infringement of the D'858 Patent is exceptional and entitles Mainstream to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

121.    Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Mainstream's business, sales, reputation, and good-will.

**COUNT SEVEN – Patent Infringement of the D'859 Patent**

122.    Mainstream repeats and realleges paragraphs 1 through 121 hereof, as if fully set forth herein.

123.    In violation of 35 U.S.C. § 271, Defendant has infringed, induced others to infringe, and/or contributed to the infringement of the claim of the D'859 Patent, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the D'859 Patent. Such unlicensed products include the NEXTPAD® and Oval Pad.

124.    Upon information and belief, Defendant has and continues to willfully infringe, induce others to infringe, and/or contribute to the infringement of the claim of the D'859 Patent, literally and/or under the doctrine of equivalents.

125.    In design patents, solid lines are used to show the claimed portions of the design, while broken lines or dashed lines show purely environmental matter or portions that form no part of the claim. To determine infringement of a design patent, it is only necessary to consider the solid lines in the design patent's claim.

126.    The NEXTPAD® and Oval Pad satisfy the design claim of the D'859 Patent because they have adopted every aspect of the claimed design and have an overall appearance that is substantially the same in the eyes of the ordinary

observer. Claim charts comparing the claim of the D'858 Patent to the NEXTPAD® and Oval Pad are attached as Exhibits L and M.

127.    As shown in Exhibits L and M, the solid lines of the D'859 define the border of the top surface and portions of the sides along with small circle features located on the top surface. The border of the top surface is shaped rectilinearly / rounded-rectangular with rounded corners and a slight bow outward both along the major and minor axis. In addition, the edges of the border are beveled. Both the NEXTPAD® and Oval Pad include the aforementioned claimed ornamental design features of the D'859 Patent, resulting in an overall appearance that is substantially the same in the eyes of the ordinary observer. To the extent there are any minor, isolated differences between the claimed design and the designs of the NEXTPAD® and Oval Pad, those differences do not change the substantially similar overall ornamental appearances. Any differences between the claimed design in the D'859 Patent and the NEXTPAD® and Oval Pad are minor and do not detract from the similarity in the overall ornamental appearances.

128.    Upon information and belief, in addition to direct infringement, Defendant takes active steps to induce others, including its customers, to directly infringe the D'859 Patent. Defendant takes such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such

active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the NEXTPAD® and the Oval Pad while selling products.

129.   Upon information and belief, Defendant knows or should know that such activities induce others to directly infringe the claim of the D'859 Patent.

130.   Upon information and belief, Defendant also contributes to the infringement of the D'859 Patent by others, including its customers. Acts by Defendant that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendant of the components of the NEXTPAD® and Oval Pad and the components are not suitable for a substantial noninfringing use.

131.   Defendant has engaged in egregious infringement behavior with knowledge of the D'858 Patent, which has been duly issued by the USPTO, and is presumed valid. Upon information and belief, Defendant has known or should have known that its actions constituted and continue to constitute infringement of the D'859 Patent, nor could it reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendant has continued its infringing activities. As such, Defendant willfully infringes the D'859 Patent.

132. By its actions, Defendant has injured Mainstream and is liable to Mainstream for infringement of the D'859 Patent pursuant to 35 U.S.C. § 271.

133. By its actions, Defendant's infringement of the D'859 Patent has irreparably injured Mainstream. Unless such infringing acts are enjoined by this Court, Mainstream will continue to suffer additional irreparable injury.

134. By its actions, Defendant's infringement of the D'859 Patent has damaged and continues to damage Mainstream in an amount yet to be determined.

135. Defendant's infringement of the D'859 Patent is exceptional and entitles Mainstream to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

136. Defendant's acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Mainstream's business, sales, reputation, and good-will.

## PRAYER FOR RELIEF

**WHEREFORE,** Mainstream respectfully requests this Court enter judgment against Defendant as follows:

a. Each of the Asserted Patents has been and continues to be infringed by Defendant;

b. Defendant's infringement of each of the Asserted Patents has been, and continues to be, willful;

c. Each of the Asserted Patents is enforceable and not invalid;

d. A preliminary injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case, or other equitable relief as the Court determines is warranted;

e. A permanent injunction enjoining Defendant and its principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents, or other such equitable relief as the Court determines is warranted;

f. An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together

74

with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g.  An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h.  An award of Defendant's profits as permitted by 35 U.S.C. § 289.

i.  A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

j.  Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: July 22, 2026              Respectfully submitted,

__/s/ Michael W. O'Neill_____

Michael W. O'Neill (FL Bar 1010806)
Mainstream Engineering Corporation
200 Yellow Place
Rockledge, FL 32955

Email: moneill@mainstream-engr.com
Tel : 321-631-3550
Attorney for Mainstream